UNITIED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JANICE G. COCLOUGH,               )
                                  )
        Plaintiff                 )
                                  )        Case No.: 1:16-cv-02376-BAH
v.                                )
                                  )
AKAL SECURITY, INC., et al.       )
                                  )
        Defendant                 )
_____ )

**PLAINTIFF'S SECOND AMENDED COMPLAINT FOR DECLARATORY
JUDGMENT, INJUNCTIVE RELIEF, AND MONETARY DAMAGES**
**Employment Discrimination**

Plaintiff Janice G. Coclough ("Plaintiff") for her Second Amended Complaint against

Defendants Akal Security, Inc. ("Akal"), Josiah Eaves ("Eaves") and Lois Epps ("Epps"), states

as follows:

**NATURE OF THE CASE**

This action for Declaratory Judgment, Injunctive Relief, and monetary damages arises

out of the termination of Plaintiff's employment from Akal Security, Inc. (Akal).  During her

employment with Akal, Plaintiff endured systematic discrimination based on her gender and

sexual harassment based on her sexual orientation.  Plaintiff was first passed over for a Lead

Security Officer position because of her gender and when she was finally promoted to the

position, the discrimination intensified.  When Plaintiff complained of the discrimination and

harassment to Defendants Epps and Eaves, neither manager took any action to redress the

discrimination or stop the harassment and, in fact, both Defendant Eaves and Defendant Epps

retaliated against Plaintiff after she complained about the discrimination and harassment.  The

Defendants also retaliated against Plaintiff by terminating her employment after they learned Plaintiff filed a complaint with the EEOC.

Plaintiff filed this suit on December 15, 2016[1], less than 90 days after receiving her notice of right to sue from the EEOC on September 27, 2016.  Plaintiff filed an amended complaint which was docketed that same day.[2]

## JURISDICTION AND VENUE

1. This is an action for damages and injunctive relief for gender discrimination, sexual harassment, sexual orientation discrimination, and retaliation by the Defendants in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq. (hereafter "Title VII"), and the District of Columbia Human Rights Act, D.C. Code §§ 2-1401.01, et seq. (hereafter "D.C.H.R.A." or "D.C. Human Rights Act").

2. This Court has jurisdiction under section 706(f)(3) of Title VII (42 U.S.C. § 2000e-5(f)(3)), 28 U.S.C. §§ 1331 (federal question) and 1367 (supplemental).  Jurisdiction of this Court is also based on 28 U.S.C. §1332, because there is complete diversity of citizenship between plaintiff and Defendant Akal, and since the amount in controversy exceeds the sum of $75,000.00, exclusive of interests and costs.

3. Venue lies in this judicial district pursuant to 28 U.S.C. §§2000e-5(f), 1391(a)(1), (a)(2), because this is where plaintiff was and would be employed but for defendants' discrimination, harassment, and retaliation, and where defendants engaged in their unlawful acts.

---

[1] The Court docket has an entry dated December 15, 2016 indicating "Initiating Pleading & IFP Application Received on 11/28/2016."
[2] The Clerk's time/date stamp indicates the amended complaint was received on December 12, 2016.

4. Plaintiff went to the U.S. Equal Employment Opportunity Commission ("EEOC") on June 10, 2016 to file a discrimination charge against the Defendants, alleging gender discrimination and retaliation on the part of the Defendants.  Plaintiff completed an intake interview on that date.  Subsequently, on June 23, 2016, Plaintiff signed her discrimination charge, alleging gender and sexual orientation discrimination and retaliation on the part of the Defendants.

5. On July 13, 2017 the EEOC issued a dismissal and Notice of Right to Sue. Plaintiff did not receive that right to sue letter until September 27, 2016.

6. On July 27, 2016, Plaintiff wrote an email to Mardjon Salehibakhsh of the EEOC stating that she had not, as of that date received a right to sue letter.  She received a return email indicating Ms. Salehibakhsh would be out of the office until August 10, 2016 and to contact Mr. Alan Anderson for assistance.

7. Plaintiff contacted and spoke with Alan Anderson, inquiring about her right to sue letter. Plaintiff never received the right to sue letter.

8. On August 8, 2016 Plaintiff again emailed Ms. Salehibakhsh, indicating that she had not heard from Mr. Anderson in over a week and again inquiring about the right to sue letter. Having not heard from Ms. Salehibakhsh by September 27, 2016, Plaintiff emailed her again on that date.  Later that day, Ms. Salehibakhsh returned Plaintiff's email, attaching the right-to-sue letter.

9. This case was timely initiated on December 15, 2016 according to the Court docket.

## **PARTIES**

10. Plaintiff is a resident of the District of Columbia and at all times relevant was employed by Akal as a Lead Court Security Officer (LCSO) at the District of Columbia Superior

Court, 500 Indiana Avenue, NW, Washington DC 20001.  As an LCSO, Plaintiff's duties included Attending and conducting roll calls, acting as shift supervisor on the Saturday evening shift, working in the control room, assisting with payroll, conducting in-service training in conjunction with two other LCSOs and one Special Security Officer (SSO), patrolling and securing the premises, relieving other officers, working the x-ray machine and the magnetometer, and supervising 8-9 SSOs per Lead assignment.  Plaintiff is an African-American woman.

11. Defendant Akal is one of the largest contract security companies in the country.  Akal provides security services and personnel to courthouses across the country including at the District of Columbia Superior Court where Plaintiff was assigned.

12. Defendant Epps is currently an employee of Akal assigned to the Superior Court.  At all times relevant Defendant Epps was in Plaintiff's direct chain of supervision.

13. Defendant Eaves is currently an employee of Akal assigned to the Superior Court.  At all times relevant Defendant Eaves was in Plaintiff's direct chain of supervision.

## **FACTS**

14. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-13 as if fully set forth herein.

15. Plaintiff worked for Akal and had been employed with the Security Services Program since October 4, 2010.  Plaintiff was a loyal employee who reported to work on time, in proper gear, and professionally carried out her duties.  Before she began to assist other employees with their work-related issues, and before she began to voice her own complaints of discrimination and harassment to her supervisors, Plaintiff had never received any disciplinary actions, write-ups, or warnings.

16. Beginning in 2010 Plaintiff began to experience gender discrimination in the workplace. Specifically, Plaintiff was passed-over for overtime work and, if she were ever given overtime it was because the male employees who were always  given hours, could not work.  In those instances, Plaintiff would be asked to work overtime on the same day the overtime was available to ensure full coverage.

17. Plaintiff's male coworkers would complain and make comments about the female employees at work.  It was a common practice for the male employees to state that the women always complain when given an assignment or denied a benefit or privilege afforded to the male employees.

18. At times, Plaintiff and other female employees were sent out to other sites to work on Saturdays, so that the men could work in the main Courthouse – the male employees were less likely to have to work offsite.

19. The discriminatory and unprofessional atmosphere of the workplace was pervasive.  Male employees would call each other into the control room or the front door during rush times when large amounts of court employees and the public were entering the courthouse. These male employees, in full view of Plaintiff and other female Akal employees, would use the camera equipment to watch the women enter the building and would train the cameras onto women's body parts.  This behavior, which continued until June of 2016 when Plaintiff was suspended and placed on administrative leave, made Plaintiff very uncomfortable at work prompting her to complain to her managers.

20. Despite her excellent credentials, in October of 2014, Plaintiff was passed over for a promotion to LCSO.  Akal employees widely agreed that management did not wish for

Plaintiff to be the first female in almost 20 years to make LCSO.  This statistic alone is an indication of the discrimination that took place at Akal.

21. When Plaintiff complained to Defendant Epps about being passed over, Defendant Epps essentially told Plaintiff that she should get used to it because Plaintiff was perceived as a complainer and Akal was going to protect the "old boys network."  Plaintiff continued to voice her concern about her treatment to Akal management.

22. Finally, in December of 2014, Plaintiff was selected as an LCSO.  Nonetheless, the discriminatory treatment by her supervisors and some subordinates intensified.

23. In Plaintiff's capacity as LCSO, Akal employees would come to Plaintiff with their concerns and complaints.  Plaintiff would then report those concerns to Defendants Epps and Eaves.

24. Plaintiff was an advocate for her mostly-female coworkers who were being mistreated by Akal.

25. Because of her actions in assisting other officers, Plaintiff was perceived as a trouble-maker by her supervisors.  Plaintiff was told by Defendants Epps and Eaves not to bother helping others apply for open positions or opportunities.  The implication was that those other employees would not be selected because they received assistance from the Plaintiff.

26. In 2013-2014, Plaintiff sought to switch her tour of duty to sometimes work the midnight shift in order to care for her terminally ill mother during the day.  Plaintiff's supervisors were aware of Plaintiff's need to switch shifts because Plaintiff had submitted two applications for FMLA leave.  Plaintiff continued to ask her supervisors for a shift

change and was continually given excuses as to why she could not work midnights on occasion.

27. Conversely, during that same period of time, Plaintiff's male colleagues were permitted to switch and work the evening shift.  Upon information and belief, these male co-workers did not have the need to care for a family member.

28. During her tenure with Akal, Plaintiff was continually denied overtime, despite the fact that Plaintiff expressed to the scheduler that she needed the overtime.  The scheduler gave preference to Plaintiff's male colleagues, giving them 20-30 hours of overtime per pay period at times.

29. In 2015, Plaintiff's job as LCSO was made exponentially more difficult because of the actions of her supervisors and other male LCSOs.  Akal management essentially attempted to 'freeze' Plaintiff out to make her ineffective at her job.

30. Plaintiff was omitted from conducting roll call by LCSO Barnes.  Plaintiff was never given critical information regarding details for the day and events that were to take place in the courthouse.

31. Plaintiff would ask prior to roll call if there was anything to pass on to the officers and would always be told "No."  However, when LCSO Gaines, a male LCSO, did the roll call, he would have a list of information that was passed on to him from LCSO Barnes.

32. Akal management did not want Plaintiff to conduct roll call.

33. This behavior by Akal management made the Courthouse less safe.  There were continued daily mistakes made during roll call, which could have adversely impacted security operations.

34. Plaintiff was also accused of improperly changing the schedules of her subordinates, and verbally counselled for doing so.  However, as a LCSO, it is necessary to make daily changes to the schedule due to the many errors on the schedule made by the scheduler. Plaintiff never modified a subordinate's schedule without the permission of the scheduler. When the male LCSOs had to make schedule changes, they did not received counseling of any kind.

35. Plaintiff's supervisors, specifically Defendant Eaves, undermined Plaintiff's ability to manage her subordinates.  Subordinates were allowed to use profane language towards Plaintiff without facing punishment, ensuring subordinates would not respect the Plaintiff.  From 2014 – 2016 Plaintiff routinely complained to Defendant Epps who took no action to stop Defendant Eaves' treatment of Plaintiff.

36. This lack of respect culminated in subordinates and colleagues harassing Plaintiff because of her friendship with a co-worker.

37. On a daily basis throughout 2014-2016 when Plaintiff would patrol the court with a female coworker, the male security personnel in the control room would made lewd and embarrassing comments through the intercom system as Plaintiff and the coworker walked past the intercoms.  Security personnel would suggest Plaintiff and the coworker were dating, make lewd comments and, during one incident, telling Plaintiff that they could see Plaintiff sitting on her coworker's lap while Plaintiff was posted at the garage booth.  Plaintiff felt embarrassed, humiliated, and degraded by these comments.

38. Security personnel in the control room would use the cameras to follow Plaintiff and her coworker wherever they were in the building, and would use the intercom system to make lewd comments.  Because the entire building is wired with cameras and the

intercoms are also throughout the building, Plaintiff could never escape the harassing behavior.

39. Plaintiff's male coworkers would also speculate in the common areas of the workplace that Plaintiff and her female coworker were lesbians and in a relationship.  Displaying their ignorance and insensitivity, male Akal employees would comment to Plaintiff on who they thought was the male and who they thought was the female in the relationship. These insults embarrassed and humiliated Plaintiff.

40. Male Akal employees also stated that Plaintiff and her female coworkers had kidnapped a female subordinate, driven the subordinate to a home in West Virginia, and solicited sexual favors from the subordinate.  During a tearful and emotional meeting with Defendant Epps, Plaintiff complained about this incident and asked Defendant Epps to put a stop to this behavior.  Defendant Epps took no action.

41. These embarrassing and hurtful comments became rumors and, later, common knowledge which pervaded Plaintiff's workplace.

42. Though Plaintiff reported this behavior to Defendants Eaves and Epps, no Akal employee faced any discipline in connection with their actions towards Plaintiff.  Worse, the discriminatory and harassing behavior continued up to the time Plaintiff was terminated.

43. Plaintiff's subordinates were aware that Plaintiff's supervisors would not discipline them for insubordination towards Plaintiff.  In 2015, a female subordinate who was upset with Plaintiff, Erika Bumbry, grabbed Plaintiff's plate and threw it on the floor.  Plaintiff brought this act of insubordination to the attention of Defendant Eaves, however, he took no action.  Plaintiff wondered to Defendant Eaves whether SSO Bumbry was mentally fit

to continue as a security officer but Eaves only laughed, essentially telling Plaintiff to

deal with it.

44. In 2016, a female subordinate, SSO Elaine Payne, used profane language towards

Plaintiff for no apparent reason while in the presence of several other subordinates.  SSO

Payne stated that "this is how I am and I can say whatever the fuck I want."  Plaintiff

reported this incident to Defendant Eaves and he took no action against SSO Payne.

45. In 2015, a male co-worker, Officer Garrison, had his cell phone out with the screen lit,

while he was on his post.  This is a blatant violation of the rules.  When Plaintiff

informed Garrison to end the call, he began screaming and yelling at Plaintiff.  When

Plaintiff directed Garrison to see Defendant Eaves, Garrison became violent and

assaultive, displaying violent behavior in the office.  Defendant Eaves did nothing;

instead, Garrison was escorted out of the office by LCSO Barnes in order to give

Garrison time to "calm down."

46. No adverse action was taken against Garrison for the use of his cell phone while he was

supposed to be securing the courthouse.  Contrast that with the fact that Plaintiff was

suspended and ultimately terminated for sending a critical text message related to her

father's illness during training class.

47. Plaintiff asked Defendant Eaves why he would allow Akal employees to curse, yell at,

and display assaultive behavior towards Plaintiff without discipline.  Defendant Eaves

made it clear that he intended to take no corrective action against Garrison and told

Plaintiff to "write [Garrison] up for the phone."

48. Garrison is a part of the Old Boys Network who has had issues with other Akal

employees in the past but he still remains employed by Akal.  Garrison is being protected

by Akal's Chief Operating Officer on the contract, Mr. Parris.  Upon information and

belief, Garrison was even arrested on domestic violence charges.  Nonetheless, he did not

face disciplinary action and is still employed by Akal.

49.  Other male employees committed serious violations of policy and security protocol

without facing disciplinary action.  The male employees appeared to be protected by

Defendant Eaves and other members of the Old Boys Network.

50. Specifically, LCSO W. Barnes made constant errors on the schedule, which resulted in

shortages of security personnel.  Plaintiff was often called upon to correct the schedule

LCSO Barnes put together in order to ensure proper security coverage.  Upon information

and belief, LCSO Barnes never faced disciplinary action in connection with the security

lapses that would have occurred if not for Plaintiff's actions.

51. Additionally, two male LCSOs were engaged in a heated altercation at work while both

were armed.  No disciplinary action was taken against either.

52. In March of 2015, Defendant Eaves asked Plaintiff to learn how to complete time and

attendance records for payroll purposes, a task that no other LCSO agreed to do.  Plaintiff

agreed to assist and learned how to complete time and attendance.

53. Plaintiff looked at this as an opportunity to prove her value to Akal by taking on

additional responsibilities that other LCSOs did not want.  Plaintiff believed her

initiative, willingness to take on these added responsibilities, and dedication to Akal

would help her chances to advance in the company despite the discrimination she faced.

54. In 2015, Plaintiff informed Defendants Eaves and Epps that employees were inputting

their overtime without a valid code to justify the overtime.  They took no action against

the employees who sought unjustified overtime.  Failure of Akal employees to properly

record and justify overtime that Akal paid out would likely result in the District

government being overcharged on the contract with Akal.  If done intentionally, Akal

employees will have committed fraud on the District government.  It is gross

mismanagement of District funds for Akal to pay unjustified overtime to Akal

employees.

55. At some point in 2015, Plaintiff was not paid correctly for the hours she worked.

Plaintiff asked Defendant Eaves to review the records and correct her pay, if warranted.

Defendant Eaves took no action, prompting Plaintiff to file a grievance with her union.

56. Defendant Eaves knew Plaintiff had filed a grievance, telling Plaintiff that her union did

not pursue the grievance and it was dismissed.

57. Thereafter, Plaintiff was locked out of the payroll system.  Plaintiff informed Defendant

Eaves that she could no longer enter the payroll on several occasions.  One Saturday in

2015, an employee needed assistance with his time and attendance and Plaintiff could not

assist because she had been locked out of the system.  Plaintiff contacted Defendant

Eaves at home, who claimed he had no idea what could be wrong with Plaintiff's access.

58. Plaintiff was present a week later when Defendant Eaves called "Stacy" at payroll and

spoke with her via speakerphone.  Defendant Eaves informed Stacy that Plaintiff could

not access the supervisors' payroll any longer.  Stacy, not realizing Plaintiff was in the

office with Defendant Eaves, replied "I thought you said Coclough is no longer doing

payroll?"  Defendant Eaves responded "no, she is," and quickly took the phone off

speaker.

59. It was during this time that Plaintiff learned that Defendant Eaves had begun training

LCSO Ray Crawford to take over payroll duties from Plaintiff.  Defendant Eaves

removed these duties from Plaintiff in retaliation for her complaining about her pay and filing a grievance with her union.

60. About a week after the telephone call with Stacy, Plaintiff asked Defendants Epps and Eaves for a meeting to discuss the reassignment of the payroll duties from Plaintiff to LCSO Crawford.  Plaintiff also wanted to discuss insubordination issues involving her subordinates and sexual harassment by Akal employees.

61. Defendants Eaves and Epps met with Plaintiff on a Tuesday.  Plaintiff voiced her concern that she was being relieved of her payroll duties, which would be given to LCSO Crawford.  Defendant Epps indicated she was happy with Plaintiff's performance doing payroll.  Defendant Eaves claimed that payroll was LCSO Crawford's responsibility, effectively stripping Plaintiff of her duties related to payroll.  Plaintiff was aware that this would negatively impact her goal of continuing to move up the ranks at Akal.

62. Plaintiff asked Defendants Eaves and Epps to be treated fairly and asked the Defendants to prohibit her coworkers from following her on camera and making lewd comments through the intercom system.  Plaintiff at that time asked Defendant Epps if she could voice her concerns up the chain of command but Defendant Epps said she would look into Plaintiff's allegations.

63. Plaintiff never received any follow-up from Defendant Epps and the harassment continued.  Throughout 2015 and 2016 Plaintiff and her female coworker were followed on camera and subjected to lewd comments through the intercom.

64. One employee saw Plaintiff's female coworker speaking with a male and commented that if Plaintiff were to witness that, she would get upset and jealous.

65. Plaintiff spent her days constantly attempting to avoid any cameras and intercoms. Plaintiff asked Defendants Eaves and Epps to stop this behavior, however they never addressed the issue.

66. Defendant Epps was aware of discrimination and harassment in the workplace and did nothing about it.  In 2015, LCSO Crawford began targeting CSO Gwendolyn Carey-Robertson for adverse and disciplinary actions.  Plaintiff spoke to Defendant Epps on behalf of CSO Carey-Robertson to complain of Crawford's behavior.

67. Plaintiff and CSO Carey-Robertson had a meeting with Defendant Epps in reference to moving CSO Carey-Robertson from Crawford's squad due to his hostility.

68. At that meeting, Defendant Epps acknowledged the discrimination against the women at Akal.  Defendant Epps stated that she had also endured discrimination more than 20 years prior, when she first joined the courts.

69. Defendant Epps stated "don't you think that since you made lead, things have gotten worse for you?"  When Plaintiff responded affirmatively and asked why Defendant Epps would not investigate or report the discrimination up the chain of command, Defendant Epps stated "I am going to let them hang themselves."

70. CSO Carey-Robertson subsequently resigned her position due to the hostile work environment caused by Crawford and Akal's unwillingness to redress it.

71. In February of 2016, Plaintiff scheduled a meeting with Project Manager Lawrence Frost to discuss her concerns.  The meeting was scheduled for February 10.  Mr. Frost abruptly cancelled the meeting and never rescheduled it despite Plaintiff's attempts to reschedule.

72. Upon information and belief, Mr. Frost had spoken with Defendants Eaves and Epps and learned of Plaintiff's concerns prior to the February 10, 2016 meeting.

73. After Plaintiff's attempts to resolve the harassment and discrimination proved fruitless, a demoralized Plaintiff resigned from the position of In-Service Instructor and Shop Steward.

74. Plaintiff was aware that this would lessen the chances of her being promoted at Akal. Plaintiff was forced to choose her mental well-being over her desire to advance through the company.

75. On June 10, 2016, Plaintiff attended annual in-service training conducted by LCSO Gloria Shelton.  Just before this training, Plaintiff's father had been hospitalized for more than a month in intensive care.  On June 10, 2016, Plaintiff and her family were coordinating her father's release from the hospital and transportation home.  As Plaintiff received and was responding to a text message, LCSO Shelton ordered her to turn off the phone.  When Plaintiff attempted to explain the situation, LCSO Shelton left the classroom and radioed an emergency.  Defendants Eaves and Epps and LCSO Paul McLeod came into the classroom.  Plaintiff was directed to report to the supervisor's office.

76. Plaintiff met with Project Manager Lawrence Frost in the supervisor's office.  Mr. Frost stated to Plaintiff "I was coming to see you anyway, for creating a hostile work environment."

77. Mr. Frost advised Plaintiff to write a statement about the incident and submit it by Monday June 13, 2016.  Plaintiff was directed back to the classroom to continue with training.  Plaintiff took the final test and class was then dismissed.

78. Plaintiff went to the EEOC on June 10, 2016 and completed an intake questionnaire.

79. Later that day, Defendant Epps called Plaintiff and informed her that she was being suspended and placed on administrative leave.  Plaintiff appealed this decision.

80. Thereafter, Plaintiff inquired with Human Resources manager Ms. Coker if she had heard anything regarding her appeal.  Ms. Coker stated to Plaintiff that she "should not have sought outside help" through the EEOC.

81. On or about July 29, 2016, Plaintiff received a FedEx letter stating she was permanently terminated from the contract.  While she was on administrative leave, Plaintiff had to use her own accumulated leave in order to receive a pay check.  She was not on paid administrative leave.

82. On January 10, 2017, Plaintiff contacted the EEOC and requested to file a new charge of retaliation because her termination appeared to be retaliation for her filing an EEOC charge and appealing her suspension through her union.

83. On January 23, 2017, EEOC Investigator Support Assistant Mardjon Hedayati opened a new charge of retaliation against Akal.

84. On February 17, 2017, the EEOC issued a Notice of Right to Sue letter to Plaintiff for the retaliation charge.  This second amended complaint is filed within 90 days of the EEOC issuing the Notice letter.

85. Upon information and belief, there are two pending or resolved sexual harassment complaints against Defendant Eaves and a hostile working environment complaint against LCSO Ray Crawford.  Upon information and belief, these complaints did not result in any disciplinary action being taken against Eaves or Crawford.

**COUNT I**
**Gender Discrimination in Violation of Title VII**
**Defendant Akal**

86. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-85 as if fully set forth herein.

87. Plaintiff has been the victim of unlawful discriminatory conduct in the workplace at the hands of Akal employees, agents, and contractors.  Plaintiff was unlawfully subjected to disparate treatment and suffered adverse employment actions by Defendants on the basis of her gender.

88. In taking the foregoing actions described above, Defendant subjected Plaintiff to adverse employment action; materially and adversely altered the terms, conditions, and privileges of Plaintiff's employment and Plaintiff's future employment opportunities; foreclosed Plaintiff from obtaining comparable future employment; stigmatized Plaintiff; and damaged Plaintiff's professional reputation and standing in the community of law enforcement and security agencies in which she was formerly employed.

89. In taking the foregoing actions and discriminating against Plaintiff on account of her gender, Defendant violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2.

90. Defendant's violation of Plaintiff's civil rights caused her to suffer past and future pecuniary loss, loss of employment and future employment opportunities, loss of wages and benefits, emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

**WHEREFORE**, Plaintiff requests that this Court issue a judgment:

    a.  Reinstating Plaintiff to her former position as Lead Court Security Officer, or, alternatively, awarding Plaintiff front pay for a period not less than five years;

    b.  Awarding Plaintiff back pay from June 10, 2016 to the present;

c.  Awarding damages in the amount of $10,000,000 in compensatory and
    punitive damages against Defendant Akal;

d.  Awarding Plaintiff's attorney's fees and court costs incurred in pursuing this
    matter;

e.  Awarding further relief as the nature of this cause shall require.

## COUNT II
### Retaliation in Violation of Title VII

91. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-90 as
    if fully set forth herein.

92. Defendant retaliated against Plaintiff when Plaintiff's duties related to payroll were
    removed and given to a male coworker after Plaintiff complained about overtime
    discrepancies and a discrepancy in her own pay.  Defendant would not have taken this
    action had Plaintiff been a man in the Old Boys Network.  Male employees were
    protected by the managers at Akal.

93. Defendant retaliated against Plaintiff when Plaintiff was terminated after it was
    discovered by Defendant that Plaintiff had filed an EEOC complaint against Defendant
    and filed an appeal of her suspension.  When Plaintiff inquired with Human Resources
    manager Ms. Coker whether she had heard anything regarding Plaintiff's appeal, Ms.
    Coker stated to Plaintiff that she should not have sought outside help through the EEOC
    and her union.

94. Defendant retaliated against Plaintiff by denying Plaintiff the opportunity for overtime
    work and to change to the evening shift to care for her mother.  Defendant was aware that
    Plaintiff was a shop steward and assisted other employees with their grievances.
    Defendant would not have taken this action had Plaintiff been a man in the Old Boys

Network.  Defendant denied these employment benefits to Plaintiff because she engaged in protected activity and instead awarded these benefits to male Akal employees.

95. Defendant retaliated against Plaintiff when Mr. Frost placed Plaintiff on administrative leave, claiming that he had received a complaint of sexual harassment against Plaintiff. Mr. Frost knew that Plaintiff herself was a victim of sexual harassment and gender discrimination in the workplace and had cancelled a February 10, 2016 meeting with Plaintiff in order to discourage Plaintiff from reporting the violations.  Mr. Frost suspended Plaintiff and placed her on administrative leave to preempt Plaintiff's claims of discrimination and harassment against Akal and in retaliation for Plaintiff's initial reports of discrimination and harassment to Defendants Eaves and Epps.

96. Defendants retaliated against Plaintiff is other ways as well, as described herein.

97. Defendant's violation of Plaintiff's civil rights caused her to suffer past and future pecuniary loss, loss of employment and future employment opportunities, loss of wages and benefits, emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

**WHEREFORE**, Plaintiff requests that this Court issue a judgment:

   a.   Reinstating Plaintiff to her former position as Lead Court Security Officer, or, alternatively, awarding Plaintiff front pay for a period not less than five years;

   b.   Awarding Plaintiff back pay from June 10, 2016 to the present;

   c.   Awarding damages in the amount of $10,000,000 in compensatory and punitive damages against Defendant Akal;

   d.   Awarding Plaintiff's attorney's fees and court costs incurred in pursuing this matter;

e.  Awarding further relief as the nature of this cause shall require.

## COUNT III
### Sexual Harassment in Violation of Title VII

98. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-97 as if fully set forth herein.

99. Plaintiff has been the victim of sexual harassment in the workplace at the hands of Akal employees, agents, and contractors.  The harassment Plaintiff endured was severe and pervasive and altered the terms and conditions of her employment with Akal.

100.    In taking the foregoing actions and permitting Plaintiff to be sexually harassed, without taking any measures to stop or prevent continued harassment, Defendant violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2.

101.    Defendant's violation of Plaintiff's civil rights caused her to suffer past and future pecuniary loss, loss of employment and future employment opportunities, loss of wages and benefits, emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

**WHEREFORE**, Plaintiff requests that this Court issue a judgment:

a.  Reinstating Plaintiff to her former position as Lead Court Security Officer, or, alternatively, awarding Plaintiff front pay for a period not less than five years;

b.  Awarding Plaintiff back pay from June 10, 2016 to the present;

c.  Awarding damages in the amount of $10,000,000 in compensatory and punitive damages against Defendant Akal;

d.  Awarding Plaintiff's attorney's fees and court costs incurred in pursuing this matter;

e.  Awarding further relief as the nature of this cause shall require.

## COUNT IV
### Gender Discrimination in Violation of
### The District of Columbia Human Rights Act
### All Defendants

102.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs

1-101 as if fully set forth herein.

103.     Plaintiff has been the victim of unlawful discriminatory conduct in the workplace

at the hands of Akal employees, agents, and contractors.  Plaintiff was unlawfully

subjected to disparate treatment and suffered adverse employment actions by Defendants

on the basis of her gender.

104.     In taking the foregoing actions described above, Defendants subjected Plaintiff to

adverse employment action; materially and adversely altered the terms, conditions, and

privileges of Plaintiff's employment and Plaintiff's future employment opportunities;

foreclosed Plaintiff from obtaining comparable future employment; stigmatized Plaintiff;

and damaged Plaintiff's professional reputation and standing in the community of law

enforcement and security agencies in which she was formerly employed.

105.     In taking the foregoing actions and discriminating against Plaintiff on account of

her gender, Defendants violated The District of Columbia Human Rights Act, D.C. Code

§§ 2-1401.11, *et seq.*

106.     Defendants' violation of Plaintiff's rights under the Human Rights Act caused her

to suffer past and future pecuniary loss, loss of employment and future employment

opportunities, loss of wages and benefits, emotional pain, embarrassment, humiliation,

mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

**WHEREFORE**, Plaintiff requests that this Court issue a judgment:

a.   Reinstating Plaintiff to her former position as Lead Court Security Officer, or, alternatively, awarding Plaintiff front pay for a period not less than five years;

b.   Awarding Plaintiff back pay from June 10, 2016 to the present;

c.   Awarding damages in the amount of $10,000,000 in compensatory and punitive damages against Defendant Akal;

d.   Awarding Plaintiff's attorney's fees and court costs incurred in pursuing this matter;

e.   Awarding further relief as the nature of this cause shall require.

## COUNT V
### Sexual Orientation Discrimination in Violation of the
### District of Columbia Human Rights Act
### All Defendants

107.    Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-106 as if fully set forth herein.

108.    Plaintiff has been the victim of unlawful discriminatory conduct in the workplace at the hands of Akal employees, agents, and contractors.  Plaintiff was unlawfully subjected to disparate treatment and suffered adverse employment actions by Defendants on the basis of her gender.

109.    In taking the foregoing actions described above, Defendants subjected Plaintiff to adverse employment action; materially and adversely altered the terms, conditions, and privileges of Plaintiff's employment and Plaintiff's future employment opportunities; foreclosed Plaintiff from obtaining comparable future employment; stigmatized Plaintiff; and damaged Plaintiff's professional reputation and standing in the community of law enforcement and security agencies in which she was formerly employed.

110.     In taking the foregoing actions and subjecting Plaintiff to harassment based on her perceived and/or actual sexual orientation, Defendants violated The District of Columbia Human Rights Act, D.C. Code §§ 2-1401.11, *et seq.*

111.     Defendants' violation of Plaintiff's rights under the Human Rights Act caused her to suffer past and future pecuniary loss, loss of employment and future employment opportunities, loss of wages and benefits, emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

**WHEREFORE**, Plaintiff requests that this Court issue a judgment:

   a.  Reinstating Plaintiff to her former position as Lead Court Security Officer, or, alternatively, awarding Plaintiff front pay for a period not less than five years;

   b.  Awarding Plaintiff back pay from June 10, 2016 to the present;

   c.  Awarding damages in the amount of $10,000,000 in compensatory and punitive damages against Defendant Akal;

   d.  Awarding Plaintiff's attorney's fees and court costs incurred in pursuing this matter;

   e.  Awarding further relief as the nature of this cause shall require.

<u>**COUNT VI**</u>
**Sexual Harassment in Violation of the**
**District of Columbia Human Rights Act**
**All Defendants**

112.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-111 as if fully set forth herein.

113.     Plaintiff has been the victim of sexual harassment in the workplace at the hands of Akal employees, agents, and contractors.  The harassment Plaintiff endured was severe and pervasive and altered the terms and conditions of her employment with Akal.

114.     In taking the foregoing actions and permitting Plaintiff to be sexually harassed, without taking any measures to stop or prevent continued harassment, Defendant violated the District of Columbia Human Rights Act.

115.     Defendants' violation of Plaintiff's rights under the DCHRA caused her to suffer past and future pecuniary loss, loss of employment and future employment opportunities, loss of wages and benefits, emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

**WHEREFORE**, Plaintiff requests that this Court issue a judgment:

    a.   Reinstating Plaintiff to her former position as Lead Court Security Officer, or, alternatively, awarding Plaintiff front pay for a period not less than five years;

    b.   Awarding Plaintiff back pay from June 10, 2016 to the present;

    c.   Awarding damages in the amount of $10,000,000 in compensatory and punitive damages against Defendant Akal;

    d.   Awarding Plaintiff's attorney's fees and court costs incurred in pursuing this matter;

    e.   Awarding further relief as the nature of this cause shall require.

<u>**COUNT VII**</u>
**Retaliation in Violation of the**
**District of Columbia Human Rights Act**
**All Defendants**

116.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-115 as if fully set forth herein.

117.     Defendants retaliated against Plaintiff when Plaintiff's duties related to payroll were removed and given to a male coworker after Plaintiff complained about overtime discrepancies and a discrepancy in her own pay.  Defendants would not have taken this

action had Plaintiff been a man in the Old Boys Network.  Male employees were protected by the managers at Akal.

118.	Defendants retaliated against Plaintiff when Plaintiff was terminated after it was discovered by Defendants that Plaintiff had filed an EEOC complaint against Defendants and filed an appeal of her suspension.  When Plaintiff inquired with Human Resources manager Ms. Coker whether she had heard anything regarding Plaintiff's appeal, Ms. Coker stated to Plaintiff that she should not have sought outside help through the EEOC and her union.

119.	Defendants retaliated against Plaintiff by denying Plaintiff the opportunity for overtime work and to change to the evening shift to care for her mother.  Defendants was aware that Plaintiff was a shop steward and assisted other employees with their grievances.  Defendants would not have taken this action had Plaintiff been a man in the Old Boys Network.  Defendants denied these employment benefits to Plaintiff because she engaged in protected activity and instead awarded these benefits to male Akal employees.

120.	Defendants retaliated against Plaintiff when Mr. Frost placed Plaintiff on administrative leave, claiming that he had received a complaint of sexual harassment against Plaintiff.  Mr. Frost knew that Plaintiff herself was a victim of sexual harassment and gender discrimination in the workplace and had cancelled a February 10, 2016 meeting with Plaintiff in order to discourage Plaintiff from reporting the violations.  Mr. Frost suspended Plaintiff and placed her on administrative leave to preempt Plaintiff's claims of discrimination and harassment against Akal and in retaliation for Plaintiff's initial reports of discrimination and harassment to Defendants Eaves and Epps.

121.     Defendants retaliated against Plaintiff is other ways as well.

122.     Defendants' violation of Plaintiff's rights were egregious and taken in conscious disregard of or with deliberate indifference to Plaintiff's rights under the DC Human Rights Act, DC Code §2-1402.61.  Defendants Eaves and Epps had actual knowledge of gender discrimination and sexual harassment at Akal and told Plaintiff that she did not intend to redress the discrimination.  This behavior is outrageous, shocks the conscience, wanton, and oppressive, and was taken with legal and actual malice.

123.     In taking the foregoing actions and retaliating against Plaintiff, Defendants violated The District of Columbia Human Rights Act, D.C. Code §§ 2-1402.61, *et seq.*

124.     Defendants' violation of Plaintiff's rights under the Human Rights Act caused her to suffer past and future pecuniary loss, loss of employment and future employment opportunities, loss of wages and benefits, emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

**WHEREFORE**, Plaintiff requests that this Court issue a judgment:

    a.  Reinstating Plaintiff to her former position as Lead Court Security Officer, or, alternatively, awarding Plaintiff front pay for a period not less than five years;

    b.  Awarding Plaintiff back pay from June 10, 2016 to the present;

    c.  Awarding damages in the amount of $10,000,000 in compensatory and punitive damages against Defendant Akal;

    d.  Awarding Plaintiff's attorney's fees and court costs incurred in pursuing this matter;

    e.  Awarding further relief as the nature of this cause shall require.

## COUNT VIII
### Violation of the Whistleblower Protection Act

**D.C. Code § 2-223.01, et seq.**

125.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs
1-124 as if fully set forth herein.

126.     In 2015, Plaintiff informed Defendants Eaves and Epps that employees were
inputting their overtime without a valid code to justify the overtime.  They took no action
against the employees who sought unjustified overtime.  Failure of Akal employees to
properly record and justify overtime that Akal paid out would likely result in the District
government being overcharged on the contract with Akal.  If done intentionally, Akal
employees will have committed fraud on the District government.  It is gross
mismanagement of District funds for Akal to pay unjustified overtime to Akal
employees.

127.     Defendant Eaves stripped Plaintiff of her duties related to payroll.  Plaintiff was
aware that this would negatively impact her goal of continuing to move up the ranks at
Akal.

128.     Because she complained to Defendants Eaves and Epps about overtime
irregularities that may have been wasting District government funds, Plaintiff's
responsibilities in connection with completing payroll were taken away.  Plaintiff was
completely locked out of the payroll system.  Plaintiff was ultimately terminated, in part
because she complained about overtime irregularities impacting the contract with the
District government.

129.     Defendants violated the District of Columbia Employees of District Contractors
and Instrumentalities Whistleblower Protection Act when Plaintiff's duties related to
payroll were removed and given to a male coworker and when Plaintiff was terminated

after she complained about overtime discrepancies.  Defendants would not have taken this action had Plaintiff not complained about payroll discrepancies.

130.     Defendants' retaliation in violation of the District of Columbia Employees of District Contractors and Instrumentalities Whistleblower Protection Act caused Plaintiff to suffer past and future pecuniary loss, loss of employment and future employment opportunities, loss of wages and benefits, emotional pain, embarrassment, humiliation, mental anguish, inconvenience, anxiety, depression, and loss of enjoyment of life.

**WHEREFORE**, Plaintiff requests that this Court issue a judgment:

f.  Reinstating Plaintiff to her former position as Lead Court Security Officer, or, alternatively, awarding Plaintiff front pay for a period not less than five years;

g.  Awarding Plaintiff back pay from June 10, 2016 to the present;

h.  Awarding damages in the amount of $10,000,000 in compensatory and punitive damages against Defendant Akal;

i.  Awarding Plaintiff's attorney's fees and court costs incurred in pursuing this matter;

j.  Awarding further relief as the nature of this cause shall require.

## JURY TRIAL PRAYER

Plaintiff hereby demands a trial by jury on all such eligible claims.

Dated: April 21, 2017                         Respectfully Submitted,

/S/ Darrell Chambers
Darrell Chambers [980872]
The Chambers Firm, LLC
8403 Colesville Road Suite 1100
Silver Spring, MD 20910
(240) 638-2831
darrell@chambersfirmDCMD.com

## **<u>JURY TRIAL PRAYER</u>**

Plaintiff hereby demands a trial by jury on all such eligible claims.


Dated: April 21, 2017                                    Respectfully Submitted,


<u>/S/ Darrell Chambers                    </u>
Darrell Chambers [980872]
The Chambers Firm, LLC
8403 Colesville Road Suite 1100
Silver Spring, MD 20910
(240) 638-2831
darrell@chambersfirmDCMD.com