UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JANICE G. COCLOUGH, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. 16-2376 (BAH) |
| | : | |
| AKAL SECURITY, INC., *et al.*, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

Plaintiff Janice G. Coclough brings this action against her former employer, Akal Security, Inc., and two former supervisors, Lois Epps and Josiah Eaves, under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, *see* 42 U.S.C. §§ 2000e *et seq.*, the District of Columbia Human Rights Act ("DCHRA"), *see* D.C. Code §§ 2-1401.01 *et seq.*, and the Employees of District Contractors and Instrumentality Whistleblower Protection Act ("Whistleblower Act"), *see* D.C. Code §§ 2-223.01 *et seq*. *See generally* Pl.'s Second Am. Compl. for Declaratory J., Injunctive Relief, and Monetary Damages, ECF No. 24. Pending before the Court are the Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint, or, in the Alternative, for Summary Judgment, ECF No. 25; the Plaintiff's Praecipe Requesting Entry of Default Against Defendant Lois Epps, ECF No. 27; and the Plaintiff's Motion for Entry of Default Against Defendant Lois Epps, ECF No. 28.

Based on the defendants' representations that Epps now is represented by counsel and that she joins in their dispositive motion, *see* Def. Lois Epps' Opp'n to Pl.'s Mot. for Entry of Default Against Lois Epps ¶¶ 4-5, ECF No. 30, the plaintiff's motions are denied. For the

1

reasons discussed below, the defendants' motion is granted in part and denied in part, without prejudice.

## I. BACKGROUND

Akal Security, Inc. ("Akal") entered into a contract with the District of Columbia for security services at the Superior Court of the District of Columbia ("Superior Court"). Mem. of P. & A. in Support of Defs. Akal Security, Inc. and Josiah Eaves's Mot. to Dismiss Pl.'s Second Am. Compl., or, in the Alternative, for Summ. J. ("Defs.' Mem.") at 2, ECF No. 25-2. The plaintiff described Akal as "one of the largest contract security companies in the country" which "provides security services and personnel to courthouses across the country including . . . the Superior Court[.]" Pl.'s Second Am. Compl for Declaratory J., Injunctive Relief, and Monetary Damages ("SAC") ¶ 11.

The plaintiff was an Akal employee in its Security Service Program assigned to the Superior Court from October 4, 2010, SAC ¶ 15, until her termination on July 17, 2016, Defs.' Mem., Ex. A (Charge of Discrimination No. 570-2016-01588 dated June 23, 2016 ("EEOC Charge")) at 1. Lois Epps and Josiah Eaves were the plaintiff's supervisors. SAC ¶¶ 12-13. The "[p]laintiff was a member of a bargaining unit whose terms and conditions of employment [were] governed by a collective bargaining agreement . . . between Akal and the International Union, Security, Police and Fire Professionals of America and its Local 443," which agreement was in effect from October 1, 2013 through September 30, 2016. Defs.' Mem. at 3; *see generally* Defs.' Opp'n to Pl.'s Mot. for Leave to File Second Am. Compl., Ex. A (Collective Bargaining Agreement Between AKAL Security Corporation, Inc. and the INTERNATIONAL UNION OF SECURITY, POLICE, AND FIRE PROFESSIONAL[S] OF AMERICA (SPFPA) and [its] Local 443 ("CBA")), ECF No. 21-1. The CBA "cover[ed] seniority, job opportunities,

grievance procedures, discipline, hours of work and overtime, wages, leaves of absence, testing, training, and re-qualification, and various other employment topics for LCSOs and other bargaining unit positions." Defs.' Mem. at 5. For some period of time, the plaintiff held the positions of In-Service Instructor and Shop Steward. *See* SAC ¶¶ 73, 94.

The plaintiff described a "discriminatory and unprofessional atmosphere" pervading the courthouse. *Id.* ¶ 19. She allegedly began to "experience gender discrimination" in 2010. *Id.* ¶ 16. For example, she "was passed-over for overtime work" and, if she ever were offered overtime, it occurred only because male employees had not taken these overtime hours. *Id.*; *see id.* ¶ 28. She and other female employees would be "sent out to other sites to work on Saturdays[] so that the men could work in the main Courthouse," such that "the male employees were less likely to . . . work offsite." *Id.* ¶ 18. Her requests in 2013 and 2014 "to switch her tour of duty to sometimes work the midnight shift in order to care for her terminally ill mother during the day" were denied, *id.* ¶ 26, while her "male colleagues were permitted to switch and work the evening shift," *id.* ¶ 27. Male employees would accuse the female employees of "complain[ing] when given an assignment or denied a benefit or privilege afforded to the male employees." *Id.* ¶ 17.

According to the plaintiff, "[o]n a daily basis through 2014-2016 when [she] would patrol the courthouse with a female coworker, male security personnel in the control room," *id.* ¶ 37, used cameras, *id.* ¶ 38, to follow her and her coworker throughout the building and made "lewd and embarrassing comments" about them over the intercom system, *id.* ¶ 37. "[M]ale employees would also speculate . . . that [p]laintiff and her female coworker were lesbians and in a relationship." *Id.* ¶ 39. Such speculation became "common knowledge" in the workplace, causing the plaintiff to suffer embarrassment and humiliation. *See id.* ¶¶ 39-41. Since cameras

and intercoms were placed throughout the courthouse, the "[p]laintiff could never escape [this] behavior," *id*. ¶ 38, which allegedly "continued up to the time [the p]laintiff was terminated," *id*. ¶ 42. The plaintiff complained to Eaves and Epps about this behavior, yet "no Akal employee faced any discipline in connection with [his] actions towards [the p]laintiff." *Id*.

In October 2014, the plaintiff was "passed over for a promotion to [Lead Court Security Officer ('LCSO']." *Id*. ¶ 20. She complained to Epps, who told the plaintiff to "get used to it because [the p]laintiff was perceived as a complainer and Akal was going to protect the 'old boys network.'" *Id*. ¶ 21. In December 2014, the plaintiff "was selected as an LCSO," *id*. ¶ 22, the first female to do so in nearly 20 years, *id*. ¶ 20. After her promotion, the plaintiff alleged, "the discriminatory treatment" she experienced from "her supervisors and some subordinates intensified." *Id*. ¶ 22.

By this time, because of the plaintiff's advocacy on behalf of herself and female coworkers, she "was perceived as a troublemaker by her supervisors." *Id*. ¶ 25. Eaves and Epps discouraged the plaintiff from assisting other employees apply for open positions, implying that those "employees would not be selected because they received assistance from the [p]laintiff." *Id*. By 2015, "[the p]laintiff's job as LCSO was made exponentially more difficult," *id*. ¶ 29, because Akal management withheld "critical information" that should have been shared during roll call, *id*. ¶ 30. In addition, the plaintiff "was . . . accused of improperly changing the schedules of her subordinates, and [was] verbally counselled for doing so." *Id*. ¶ 34. Eaves and other supervisors allegedly "undermined [the p]laintiff's ability to manage her subordinates," who "were allowed to use profane language towards [her] without facing punishment," *id*. ¶ 35; *see id*. ¶ 44, and commit acts of insubordination, *see id*. ¶ 43, without consequences. Eaves took no action in response to the plaintiff's complaints. *See id*. ¶¶ 42-44, 47. According to the

4

plaintiff, male employees who violated rules and security protocols faced no disciplinary action. *See id*. ¶¶ 45-46, 49, 51.

In March 2015, Eaves asked the plaintiff to undertake payroll duties by learning to complete time and attendance records. *Id*. ¶ 52. She "informed . . . Eaves and Epps that employees were inputting their overtime without a valid code to justify overtime." *Id*. ¶ 54. Eaves and Epps "took no action against [these] employees," the likely result of which was "the District government being overcharged on the contract with Akal." *Id*. Further, Eaves took no action "[a]t some point in 2015" when the plaintiff "was not paid correctly for the hours she worked." *Id*. ¶ 55. His inaction "prompt[ed the p]laintiff to file a grievance," which the union declined to pursue. *Id*. ¶ 56. "Thereafter, [the p]laintiff was locked out of the payroll system," *id*. ¶ 57, and she learned that Eaves was training a male LCSO to take over payroll duties, *id*. ¶ 59. The plaintiff deemed this action "retaliation for her complaining about her pay and filing a grievance with her union." *Id*.

The plaintiff arranged a meeting with Eaves and Epps "to discuss the reassignment of the payroll duties" and "insubordination issues involving her subordinates and sexual harassment by Akal employees." *Id*. ¶ 60. Eaves informed the plaintiff "that payroll was LCSO Crawford's responsibility, effectively stripping [her] of . . . duties related to payroll." *Id*. ¶ 61. The plaintiff also asked Eaves and Epps "to prohibit her coworkers from following her on camera and making lewd comments through the intercom system." *Id*. ¶ 62. Epps was to "look into [the p]laintiff's allegations," *id*., but the plaintiff heard nothing "and the harassment continued," *id*. ¶ 63; *see id*. ¶¶ 64-65, 68-69. The plaintiff also arranged a meeting on February 10, 2016, "with Project Manager Lawrence Frost to discuss her concerns," but Frost "abruptly cancelled the meeting and never rescheduled it." *Id*. ¶ 71.

5

On June 10, 2016, the plaintiff attended annual in-service training conducted by LCSO Gloria Shelton. *Id.* ¶ 75. During the training, the plaintiff received and responded to a text message pertaining to her father's release from the hospital. *Id.* "LCSO Shelton ordered [the plaintiff] to turn off the phone." *Id.* The "[p]laintiff attempted to explain the situation to LCSO Shelton," at which time LCSO Shelton left the classroom, called in an emergency to which Eaves, Epps and LCSO McLeod responded. *Id.* The plaintiff was directed to the supervisor's office, *id.*, where she met with Project Manager Lawrence Frost, *id.* ¶ 76. Frost sent the plaintiff back to the classroom to continue the training session; plaintiff took the final test and was dismissed with the rest of the class. *Id.* ¶ 77. Epps called the plaintiff later that day and informed her that she had been suspended and placed on administrative leave. *Id.* ¶ 79. The plaintiff appealed her suspension by union grievance. *Id.*

The "[p]laintiff went to the U.S. Equal Employment Opportunity Commission ('EEOC') on June 10, 2016 to file a discrimination charge [.]" *Id.* ¶ 4; *see id.* ¶ 78. She completed an intake questionnaire on that day, *id.* ¶¶ 4, 78, and signed her EEOC Charge on June 23, 2016, *id.* ¶ 4. The plaintiff checked one box marked "RETALIATION," and indicated that the alleged act(s) of discrimination occurred between June 10, 2016 and June 17, 2016. *See* Defs.' Mem., Ex. A at 1. The narrative portion of the charge states:

> I was employed with [Akal] since October 4, 2010, until I was *terminated on June 17, 2016*. My job classification was Lead Court Security Officer.
>
> *Between July 2015 to June 2016, Coworkers[] have been harassing me about having lunch with my coworker who is also female. They would make reference as to the nature of our relationship. I have not disclosed my preference*; I have informed both District Supervisors about many incidents. They have not taken any actions to resolve the situation.

> On *June 10, 2016*, I was in a training class, led by LSSO Gloria Shelton. I was checking and sending a text on my phone due to urgent family matters. Gloria Shelton, the instructor observe someone pass a phone and directed me to "Janice[.]" I have not had any problems with any other class until this one, I asked what problems are you having? She then stated to put the phone away. I informed her that I could not put the phone away, it was very important, could you just continue with the class and I will once I am finished.
>
> Gloria Shelton stated "get out of the class[.]" I stated to her that I am not going to leave the classroom, this is very important. Gloria Shelton, then said "I tell you what" and left the classroom. She radioed for an emergency and later both my District Supervisors responded along with another L[C]SO. Within the hour Project Manager Mr. Lawrence [F]rost responded, and directed me to the supervisors office, I waited for approximately 40 minutes, and once he responded, he stated, "I was here to see you anyway, because he had complaints that I was creating a hostile work environment[.]" Later after the union representative responded, I was sent back to the classroom and took my final exam, I went home. While at home, I received a phone call from District Supervisor Lois Epps, that I am *suspended* until further notice.
>
> *I believe I have been retaliated against for engaging in protected activity in violation of Title VII.*

*Id.*, Ex. A at 1-2 (emphasis added). On July 29, 2016, the plaintiff received a letter from Akal "stating she was permanently terminated[.]" 2d Am. Compl. ¶ 81.

EEOC sent Akal a notice of the plaintiff's charge of discrimination, which Akal received on June 29, 2015. Errata to Defs. Akal Security Inc. and Josiah Eaves's Mot. to Dismiss, or, in the Alternative, for Summ. J., Ex. 1 (Notice of Charge of Discrimination, Charge No. 570-20016-01588, dated June 21, 2016) at 1, ECF No. 12-2. According to the EEOC, the plaintiff charged employment discrimination under Title VII. *Id*. In the section marked "CIRCUMSTANCES OF ALLEGED DISCRIMINATION," it checked the box marked "Retaliation" only, and on the lines below stated, "ISSUES: Discharge" occurring on "DATE(S) (on or about): EARLIEST: 06-10-2016 LATEST: 06-17-2016." *Id*.

The EEOC determined that, "[b]ased on its investigation, [it was] unable to conclude that the information obtained establishes violations of the statutes." Pl.'s Mem. in Opp'n to Def. Akal Security, Inc. and Josiah Eaves's Mot. to Dismiss Pl.'s Am. Compl. & Mot. for Summ. J., Ex. 3 (Dismissal and Notice of Rights, EEOC Charge No. 570-2016-01588 dated July 13, 2016), ECF No. 18-1. The plaintiff did not receive a copy of this right-to-sue notice until September 27, 2016.[1] SAC ¶ 5. She filed her original complaint in this Court on November 28, 2016, *see* ECF No. 1, and amended the complaint on December 12, 2016, *see* ECF No. 3.[2]

On January 10, 2017, the plaintiff contacted EEOC to file a new charge of discrimination on the ground that her termination was in retaliation for having filed her EEOC Charge and for having appealed her suspension. SAC ¶ 82. EEOC "opened a new charge of retaliation against Akal," *id*. ¶ 83, and issued a right-to-sue notice on February 27, 2017, *id*. ¶ 84. The plaintiff, by counsel, sought leave to amend the complaint on April 21, 2017, ECF No. 20, and the Court granted leave by Order issued on May 16, 2017, ECF No. 23.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wood v. Moss*, __ U.S. __, 134 S. Ct. 2056, 2067 (2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible when the plaintiff pleads factual content that is more

---

[1] The delay in the plaintiff's receipt of the right-to-sue notice apparently was due to a typographical error. EEOC sent the right-to-sue letter to the plaintiff at 3906 26th Street, N.E., Washington, DC 20018, and the plaintiff's correct address is 3906 20th Street, N.E., Washington, DC 20018.

[2] The original complaint bears a date stamp indicating that the Clerk of Court received the pleading on November 28, 2016. Review of the Court's CM/ECF docket reveals that, on that same date, the plaintiff filed an application to proceed *in forma pauperis*, which was granted on December 14, 2016. The Clerk of Court officially placed the complaint and application on the docket on December 15, 2016. On these facts, the complaint is treated as filed on November 28, 2016. Similarly, plaintiff's Amended Complaint, ECF No. 3, bears a date stamp indicating that the Clerk of Court received it on December 12, 2016. Although the Clerk of Court placed it on the CM/ECF docket on December 15, 2016, the Amended Complaint is treated as filed on December 12, 2016.

than "'merely consistent with' a defendant's liability," but "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007)); *see also Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012).

In considering a motion to dismiss for failure to plead a claim on which relief can be granted, the court must consider the complaint in its entirety, accepting all factual allegations in the complaint as true, even if doubtful in fact, and construe all reasonable inferences in favor of the plaintiff. *Twombly*, 550 U.S. at 555; *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) ("We assume the truth of all well-pleaded factual allegations and construe reasonable inferences from those allegations in a plaintiff's favor." (citing *Sissel v. U.S. Dep't of Health & Human Servs.*, 760 F.3d 1, 4 (D.C. Cir. 2014))). The court "need not, however, 'accept inferences drawn by [a] plaintiff[ ] if such inferences are unsupported by the facts set out in the complaint.'" *Nurriddin*, 818 F.3d at 756 (alteration in original) (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)). While matters "outside the pleadings" generally may not considered, without converting the motion to one for summary judgment, Fed. R. Civ. P. 12(d), a court deciding a motion brought under Rule 12(b)(6) may, without triggering the conversion rule, consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also English v. District of Columbia*, 717 F.3d 968, 971 (D.C. Cir. 2013).

## III. DISCUSSION

The defendants seek dismissal of the plaintiff's Second Amended Complaint on four grounds: (1) that the plaintiff failed to exhaust administrative remedies for her Title VII

9

discrimination claims; (2) that defendants Epps and Eaves cannot be held individually liable under Title VII; (3) that plaintiff's DCHRA claims are preempted by Section 301 of the Labor Management Relations Act ("LMRA"); and (4) that the plaintiff's Whistleblower Act claim is untimely and preempted by Section 301 of the LMRA. *See* Defs.' Mot. at 1. Each of these arguments is addressed *seriatim*.

## A. Exhaustion of Administrative Remedies (Counts I and III)

"A Title VII plaintiff must file an administrative complaint with the EEOC . . . prior to, and as a mandatory prerequisite to, filing a federal judicial complaint." *Elhusseini v. Compass Group USA, Inc.*, 578 F. Supp. 2d 6, 16 (D.D.C. 2008) (citations omitted); *see Tapp v. Washington Metro. Area Transit Auth.*, No. 15-cv-768, 2017 U.S. Dist. LEXIS 208929, at *9 (D.D.C. Dec. 20, 2017) ("A plaintiff may file a Title VII action in federal court only after timely exhausting administrative remedies before the EEOC."). "The purpose of the [administrative exhaustion] doctrine is to afford the agency an opportunity to resolve the matter internally and to avoid unnecessarily burdening the courts." *Artis v. Bernanke*, 630 F.3d 1031, 1034 (D.C. Cir. 2011) (quoting *Wilson v. Peña*, 79 F.3d 154, 165 (D.C. Cir. 1996)). Exhaustion of administrative remedies is an affirmative defense which defendants must prove by a preponderance of the evidence. *See id.* at 1034 n.4.

The defendants contend that the plaintiff "only filed a Charge with the EEOC alleging retaliation by Akal," *id.* at 10, and move to dismiss her gender discrimination (Count II) and sexual harassment (Count III) claims under Title VII on the ground that she failed to exhaust administrative remedies, *id.* at 11. As support, they point out that the plaintiff checked only the "RETALIATION" box in the "DISCRIMINATION BASED ON" section of the EEOC Charge

form, without checking a box indicating discrimination based on some other factor, such as sex. Defs.' Mem. at 11; *see id.*, Ex. A at 1.

The plaintiff characterizes her EEOC Charge as one "alleging gender and sexual orientation discrimination and retaliation," SAC ¶ 4, and criticizes the defendants for requesting dismissal simply "because [she] failed to check a box," Pl.'s Opp'n to Defs.' Mot. to Dismiss Second Am. Compl. ("Pl.'s Opp'n") at 4, ECF No. 26. She refers to three sentences in the narrative portion of the EEO Charge, *see id.* at 3, which read: "Between July 2015 and June 2016, Coworkers[] have been harassing me about having lunch with my coworker who is also female. They would make reference as to the nature of our relationship. I have not disclosed by preference," *id.* (emphasis removed); *see* Defs.' Mem., Ex. A at 1. According to the plaintiff, this language adequately describes gender discrimination: "only because the plaintiff is female would having lunch with a female coworker give rise to speculation "about her undisclosed sexual preference." Pl.'s Opp'n at 3. If she were a male having lunch with a female coworker, presumably there would be no "harassment or discrimination." *Id.* Therefore, the plaintiff argues, her "charge constitutes a written statement sufficiently precise to identify the parties, and to give a short description of the action or practices complained of." *Id.* (citing 42 U.S.C. § 2000e-5(b)).

"A Title VII lawsuit following the EEOC charge is limited in scope to claims that are like or reasonably related to the allegations of the charge and growing out of such allegations." *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (internal quotation marks and citation omitted). The subsequent civil case in federal district court "may only challenge . . . those allegations that were contained in the EEO complaint or those that are 'like or reasonably related to the allegations of the charge.'" *Robinson-Reeder v. Am. Council on Educ.*, 532 F. Supp. 2d 6,

11

12-13 (D.D.C. 2008) (quoting *Park*, 71 F.3d at 907). "Where . . . the additional discriminatory acts alleged by Plaintiff in [her] complaint were not articulated in the administrative charge, are not reasonably related to the allegations in the charge, and do not fall within the scope of any administrative investigation that can reasonably be expected to follow, [she] may not proceed with these additional claims without first exhausting the administrative process." *Shipman v. Amtrak*, 241 F. Supp. 3d 114, 123 (D.D.C. 2017) (Magistrate Judge's Report and Recommendation), *adopted*, 241 F. Supp. 3d 114, 117 (D.D.C. 2017), *aff'd*, No. 17-5066, 2017 U.S. App. LEXIS 14065, at *1 (D.C. Cir. Aug. 1, 2017).

The boxes on the EEOC charge form "aid a claimant in identifying the nature of her charge, [but] a claimant is not necessarily limited to the boxes she selected if she provides the basis for her claim in her written explanation." *Robinson-Reeder*, 532 F. Supp. 2d at 13 (citation omitted). Where the checked box and the written explanation on the EEOC charge form support a basis (or bases) for the alleged discrimination, the claimant may not raise new claims in district court. *See, e.g.*, *Maryland v. Sodexho, Inc.*, 474 F. Supp. 2d 160, 162 (D.D.C. 2007) (where plaintiff "checked only retaliation EEOC charge as the circumstances of the alleged discrimination," and where plaintiff "discussed only . . . his belief that he 'was terminated in retaliation for filing a previous EEOC Charge of Discrimination,'" claims based on religion, harassment, hostile work environment, or any workplace behavior occurring while he was employed cannot proceed); *Hunt v. District of Columbia Dep't of Corr.*, 41 F. Supp. 2d 31, 36 (D.D.C. 1999) (dismissing gender discrimination claim where plaintiff "specifically checked the boxes for age discrimination and retaliation, but she did not check the box for gender discrimination," and where nothing "within the EEOC claim form . . . indicates that [she] was alleging gender discrimination").

12

The shortcoming of the plaintiff's EEOC Charge is not merely a failure to check a box. The plaintiff proceeds as if the reader must isolate three sentences of her narrative statement, which referred to events that appeared to precede the dates on which the alleged retaliation occurred, while ignoring clear indicia of a retaliation claim. She checked off the "RETALIATION" box and she concluded her statement by stating, "I believe I have been retaliated against for engaging in protected activity in violation of Title VII." Not even the EEOC construed the plaintiff's EEOC Charge as alleging gender discrimination or sexual harassment: its notice to Akal reflected a retaliation claim under Title VII occurring at the earliest on June 10, 2016, the date of the plaintiff's suspension and initial intake interview at the EEOC, and at the latest on June 17, 2016, the date of the plaintiff's termination. It is too far a stretch to conclude that the plaintiff's EEOC Charge included gender discrimination and sexual harassment claims, and the defendants' motion to dismiss Counts I and III is granted.

### B. Liability of Individual Defendants Eaves and Epps (Counts I, II and III)

A Title VII discrimination claim may be brought against the plaintiff's employer. *See* 42 U.S.C. §§ 2000e(b), 2000e-2(a). Although a supervisor may be named a party defendant in a lawsuit under Title VII, he or she is not liable in his or her individual capacity for any discriminatory action of the employer. *See Gary v. Long*, 59 F.3d 1391, 1300 (D.C. Cir. 1995). The Court therefore grants the defendants' motion in part, and dismisses Counts I, II and II against defendants Eaves and Epps.

### C. Preemption (Counts IV, V, VI, and VII)

Under the DCHRA, an employer shall not "fail or refuse to hire, or to discharge, any individual; or otherwise to discriminate against any individual, with respect to [her] compensation, terms, conditions, or privileges of employment, including promotion . . . , or

13

otherwise adversely affect [her] status as an employee" because of the employee's "actual or perceived . . . sex . . . , sexual orientation, [or] gender identity or expression." D.C. Code § 2-1402.11(a). The plaintiff brings claims of gender discrimination (Count IV), sexual orientation discrimination (Count V), sexual harassment (Count VI), and retaliation (Count VII) against defendants Akal, Eaves and Epps, under the DCHRA. The defendants argue that Section 301 of the LMRA, *see* 29 U.S.C. § 185, preempts these claims. *See* Defs.' Mem. at 11-15.

"Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in [the LMRA] . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a). Section 301 is "understood . . . as a congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985); *see Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 403 (1988) (quoting *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 451 (1957)). Thus, Section 301 "completely preempts any action predicated on state law if that action is either: (1) founded upon rights created by a collective bargaining agreement; or (2) substantially dependent upon analysis of that agreement." *Berry v. Coastal Int'l Sec., Inc.*, 968 F. Supp. 2d 104, 110 (D.D.C. 2013) (citations omitted). "Thus, the crucial question a court must ask is: what is the source of the right that the plaintiff is trying to vindicate?" *Bratton v. Starwood Hotels & Resorts Worldwide, Inc.*, 65 F. Supp. 3d 8, 13 (D.D.C. 2014) (citations and internal quotation marks omitted).

The plaintiff first argues that Section 301 does not apply because Akal does not fit the definition of the term "industry affecting commerce." Pl.'s Opp'n at 4. For purposes of the

14

LMRA, this term "means any industry or activity in commerce or in which a labor dispute would burden or obstruct commerce or tend to burden or obstruct commerce or the free flow of commerce." 29 U.S.C. § 142(1). "[P]roviding security to the local courthouse," the plaintiff asserts, is not "an activity in interstate commerce or [an activity] which burdens or obstructs interstate commerce." Pl.'s Opp'n at 4. Rather, in her view, "securing a courthouse is a purely local activity having no effect on interstate commerce," such that Section 301 does not apply here. *Id*. This position appears inconsistent with the plaintiff's description of Akal as "one of the largest contract security companies in the country," SAC ¶ 11, and the defendants' representation that Akal "has federal contracts to guard immigration detention centers, federal courthouses, NASA facilities, federal buildings in Washington, D.C., and other federal facilities," Defs.' Mem. at 4. This Court is persuaded by other courts' rulings that the LMRA covers similar security companies. *See, e.g., Berry*, 968 F. Supp. 2d at 107; *Int'l Union, Sec., Police & Fire Professionals v. G4S Regulated Sec. Sols.*, No. 2:12-cv-14164, 2012 U.S. Dist. LEXIS 196875, at *2 (S.D. Fla. Sep. 26, 2012).

Next, the plaintiff argues that Section 301 otherwise does not preempt her DCHRA claims. *See* Pl.'s Opp'n at 5. She does not mention the CBA in her Second Amended Complaint, seek enforcement of the CBA, or even raise a claim requiring an interpretation of the CBA. *See id*. Rather, the plaintiff argues, resolution of her gender discrimination and sexual harassment claims only "require the interpretation of the [allegedly] illegal actions and motives of [her] managers and coworkers." *Id*. "These are non-negotiable state law rights independent of any right established by the CBA" to which the defendants refer, *id*., which the LMRA does not preempt. The Court concurs.

"[N]ot every dispute 'tangentially involving a provision of a [CBA] is preempted by [Section] 301 or other provisions of the federal labor law.'" *Berry*, 968 F. Supp. 2d at 104 (quoting *Allis-Chalmers*, 471 U.S. at 211). The plaintiff's right to be free from discrimination, harassment and retaliation does not arise from the CBA, but instead arises from a District of Columbia law – the DCHRA. *See Bratton*, 65 F. Supp. 3d at 16 (citing *Lingle*, 486 U.S. at 412).

Thus, contrary to the defendants' argument, the CBA presents no basis for dismissal of the plaintiff's DCHRA claims. *See Berry*, 968 F. Supp. 2d at 114 ("Although plaintiff contends that he was retaliated against for exercising appeal rights accorded to him under the CBA, litigating the question of whether [he] has or has not made out the elements of a retaliation claim will not require the interpretation of the CBA."); *see also Daniels v. Potomac Elec. Power Co.*, 789 F. Supp. 2d 161, 165 (D.D.C. 2011) (concluding that "plaintiff's DCHRA claims are based on rights created by DCHRA and not rights created by the CBA," and thus are not preempted by LMRA). As long as the plaintiff's DCHRA claims "can be resolved without interpreting the [CBA] itself," they are "independent of the agreement for [Section] 301 pre-emption purposes." *Lingle*, 486 U.S. at 410. Accordingly, the defendants' motion to dismiss Counts IV, V, VI and VII of plaintiff's second amended complaint is denied.

**D. Whistleblower Claim (Count VIII)**

The Employees of District Contractors and Instrumentality Whistleblower Protection Act prohibits a supervisor from "threaten[ing] to take or tak[ing] a prohibited personnel action or otherwise retaliat[ing] against an employee because of the employee's protected disclosure or because of an employee's refusal to comply with an illegal order." D.C. Code § 2-223.02(a). "An employee aggrieved by a violation of § 2-223.02 may bring a civil action before a court in the Superior Court of the District of Columbia seeking relief and damages, including but not

limited to injunction, reinstatement to the same position held before the prohibited personnel action or to an equivalent position, and reinstatement of the employee's seniority rights, restoration of lost benefits, back pay and interest on back pay, compensatory damages, reasonable costs, and attorney fees." D.C. Code § 2-223.03(a). The action must "be filed within 3 years after a violation occurs or within one year after the employee first becomes aware of the violation, whichever occurs first." *Id*.

The defendants note that the plaintiff's payroll-related duties began and ended in 2015. Defs.' Mem. at 16. "It is undisputed from the face of [the SAC] that [the plaintiff] claims to have engaged in protected activity under the Whistleblower . . . Act in 2015 and suffered an alleged retaliatory conduct (having her payroll duties taken away), also in 2015." *Id*. Since the plaintiff did not raise a whistleblower claim until she filed the Second Amended Complaint in 2017, the defendants argue that this claim is untimely, having been filed more than one year after the plaintiff knew of the alleged violations. *Id*.

The plaintiff links her termination in part to her complaints to Eaves and Epps of "overtime irregularities impacting the contract with the District government." SAC ¶ 128. She asserts that, although she "was aware that her payroll duties were taken away" in 2015, she believed that Eaves' action was discrimination based on her gender. Pl.'s Opp'n at 7. "Since [her] second amended complaint [was] filed within three years of [her] learning of the true motives" behind Eaves' action, the plaintiff argues that her Whistleblower Act claim is timely. *Id*.

The plaintiff nowhere indicates the actual dates on which the payroll duties were taken away, or on which she became aware of the alleged violation of the Whistleblower Act. These facts are not readily apparent in the Second Amended Complaint or on the current record of this

17

case, and without them, the Court cannot determine whether the whistleblower claim was filed within three years after a violation occurred, or within one year after plaintiff became aware of the violation, whichever occurred first. The Court is mindful of the D.C. Circuit's caution that "courts should hesitate to dismiss a complaint on statute of limitations grounds based solely on the face of the complaint." *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996). "[B]ecause statute of limitations issues often depend on contested questions of fact, dismissal is appropriate only if the complaint on its face is conclusively time-barred." *Bregman v. Perles*, 747 F.3d 873, 875 (D.C. Cir. 2014) (quoting *de Csepel v. Republic of Hungary*, 714 F.3d 591, 603 (D.C. Cir. 2013)); *see also United States ex rel. Shea v. Cellco P'ship*, 863 F.3d 923, 936 (D.C. Cir. 2017) ("A court should dismiss with prejudice only if it determines the plaintiff 'could not possibly cure the deficiency' by alleging new or additional facts." (quoting *Firestone*, 76 F.3d at 1209)). The plaintiff's Whistblower Act claim is not "conclusively time-barred" based on the allegations in the Second Amended Complaint.

Alternatively, the defendants argue that the LMRA preempts the plaintiff's Whistleblower Act claim. *See generally* Defs.' Mem. at 15-17. Specifically, the defendants posit that, "[s]imilar to her DCHRA claims, the [Whistleblower Act] claim is premised upon concerns [the plaintiff] had with 'hours of work and overtime' and the 'grievance procedure' used to address those concerns." *Id*. at 17 (citing SAC ¶¶ 126-29). The "[p]laintiff's concerns regarding discriminatory assignment and management of overtime are addressed directly in the CBA, and the involuntary and voluntary assignment and management is determined by seniority," the plaintiff's complaints should have been addressed through the grievance procedure set forth in the CBA. *Id*. Therefore, the defendants argue, Section 301 of the LMRA

18

preempts the claim, as "[e]ach alleged incident involving overtime and her complaints regarding such require close examination of the CBA. *Id*.

For the reasons discussed above regarding the plaintiff's DCHRA claims, the Court concludes that resolution of the Whistleblower Act claim neither pertains to a right created by the CBA itself nor calls for analysis of the CBA. Therefore, the defendants' motion to dismiss Count VIII is denied without prejudice.

## IV. CONCLUSION

The plaintiff failed to exhaust her Title VII gender discrimination and sexual harassment claims, and her supervisors, Eaves and Epps, are not personally liable under Title VII. Accordingly, the defendants' motion to dismiss Counts I and III of the Second Amended Complaint and to dismiss the plaintiff's Title VII claims against defendants Eaves and Epps, in their individual capacities, is granted. The defendants' motion is otherwise denied, and the plaintiff's retaliation claim under Title VII against Akal (Count II), the DCHRA claims (Counts IV, V, VI, VII) and Whistleblower Act claim (Count VIII) may proceed. The defendants are directed to file an answer to the plaintiff's Second Amended Complaint by April 30, 2018.

The plaintiff's Praecipe Requesting Entry of Default Against Defendant Lois Epps, ECF No. 27, and Motion for Entry of Default Against Defendant Lois Epps, ECF No. 28, are each denied.

An Order is issued separately.

DATE: March 29, 2018                               /s/ *Beryl A. Howell*

                                                                                                    BERYL A. HOWELL
                                                                                                    Chief Judge